IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LUIS A. CORA-REYES,<br><br>Plaintiff,<br><br>v.<br><br>PUERTO RICO AQUEDUCT AND<br>SEWER AUTHORITY (PRASA), et al,<br><br>Defendants. | **CIVIL NO. 08-1239 (CVR)** |

## OPINION AND ORDER

## INTRODUCTION

Above plaintiff Luis A. Cora Reyes (hereafter plaintiff "Cora") filed an Amended Complaint against defendants the Puerto Rico Aqueduct and Sewer Authority (hereafter "PRASA") and co-defendants Belkin Nieves, Esq., Eng. Pablo Reyes-Bonilla, Obed Morales, Esq., and Esteban Cátala-Núñez,  for civil rights violations under Title 42, United States Code, Sections 1983, 1985, 1986; Title 38, United States Code, Section 4301 (Uniformed Services Employment and Re-employment Act known as "USERRA") and Title 5, United States Code, Section 3501 ("Veterans' Preference Act"), as well as damages under the laws of the Commonwealth of Puerto Rico, in particular Articles 1802 and 1803, and Law Nos. 115 and 100 on discrimination.[1] *See Amended Complaint, Docket No. 24.*

On June 14, 2010, the jury trial in this case started before the undersigned.  Plaintiff presented the testimony of several witnesses and his own testimony in support of his

---

[1] This Magistrate Judge dismissed plaintiff Cora's claims under FLSA, USERRA and conspiracy under sections 1985 and 1986.  Claims against co-defendants Eng. José Ortíz, José Medina and José Molina were dismissed for failure to state a claim under Fed.R.Civ.P. 12(b)(6) and plaintiff voluntarily dismissed claims as to all defendants under the Fifth Amendment and all claims against Eng. Jorge Rodríguez.  Thus, only a Section 1983 action remained for jury trial  under federal law and the pendent state law claims.

claims.  In addition, plaintiff Cora presented the testimony of multiple witnesses including the testimony of several of the co-defendants and other witnesses somewhat related to PRASA which were depicted as "hostile witnesses" for which defendants chose not to cross-examine.  Exhibits were introduced into evidence, including some joint exhibits.  On June 21, 2010, late in the afternoon, plaintiff concluded the presentation of his case and rested.

On June 22, 2010, PRASA and the remaining co-defendants Attorney Obed Morales, Esteban Cátala, Attorney Belkin Nieves and Pablo Reyes Molina presented an oral motion under Federal Rule of Civil Procedure 50 for a judgment as a matter of law in their favor for all claims filed by plaintiff Cora.  Plaintiff orally opposed the Rule 50 request and defendants briefly replied.

After carefully considering the evidence presented by plaintiff in support of his allegations of political discrimination and retaliation, the undersigned orally GRANTED defendants Rule 50 motion in its entirety DISMISSING WITH PREJUDICE all federal claims and those filed under state law pursuant to supplemental jurisdiction. This Opinion and Order encompasses our oral ruling on the Rule 50 motion.

### RULE 50 STANDARD

The Court may grant a motion for judgment as a matter of law once a party has been fully heard on an issue if the court "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue[.]" Fed.R.Civ.P. 50(a)(1).

The United States Supreme Court has held that when "entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record. In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving

party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Id. at 150-51, 120 S.Ct. 2097 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A Rule 50 movant must shoulder a "heavy burden." White v. New Hampshire Dept. of Corrections, 221 F.3d 254, 259 (1st Cir. 2000) (quoting United States v. Scharon, 187 F.3d 17, 20 (1st Cir. 1999)).

A court may only grant judgment as a matter of law when "the evidence, together with all reasonable inferences in favor of the verdict, could lead a reasonable person to only one conclusion, namely that the moving party was entitled to judgment." Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 22 (1st Cir. 2002) (quoting Lama v. Borras, 16 F.3d 473, 477 (1st Cir. 1994)).

## ANALYSIS

Plaintiff Cora has claimed employment actions at PRASA short of dismissal have constituted adverse employment actions due to his political beliefs. Employment actions are considered sufficiently adverse if those actions, objectively evaluated, would place a substantial pressure on even one of thick skin to conform to the prevailing political view. Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1218 (1st Cir. 1989) (abrogated on other grounds by Maldonado v. Fontanes, 568 F.3d 263 (1st Cir. 2009)); Morales-Tañon v. P.R. Elec. Power Authority, 524 F.3d 15, 19 (1st Cir. 2008).

## I.    DISCRIMINATION CLAIM UNDER 42 USC SECTION 1983 AGAINST THE INDIVIDUAL DEFENDANTS.

In claims of political discrimination in employment, non-policy making employees have the burden to produce sufficient evidence, direct or circumstantial, from which a rational jury could find their political affiliation was a substantial or motivating factor behind the adverse employment action in other words, establish causation.  LaRou v. Ridlon, 98 F.3d 659, 661 (1st Cir. 1996); Acevedo Díaz v. Aponte, 1 F.3d 62, 66 (1st Cir. 1993). The employer must then articulate a non-discriminatory basis for the adverse employment action and establish, by a preponderance of the evidence, that it would have taken such action without regard to plaintiffs' political affiliation.  *See* Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 97 S.Ct. 568 (1977).

The analysis established by Mt. Healthy for political discrimination cases passes the burden of persuasion to the defendant-employer once a plaintiff has produced sufficient evidence of a *prima facie* case.  In other words, "the plaintiff-employee will prevail unless the fact finder concludes that the defendant has produced enough evidence to establish that the plaintiff's dismissal would have occurred in any event for nondiscriminatory reasons." Padilla-García v. Guillermo Rodríguez, 212 F.3d 69, 77-78 (1st Cir. 2000). Thus, defendants must persuade the court that their proffered non-discriminatory reason is credible. Rodríguez Ríos v. Cordero, 138 F.3d 22, 26 (1st Cir. 1998).

On the one hand, plaintiff's burden under Mt. Healthy goes directly to causation.  To prevail, plaintiff must point to evidence in the record which would "permit a rational fact finder to conclude that the challenged personnel action occurred and stemmed from a

Luis A. Cora-Reyes v. Puerto Rico Aqueduct and Sewer Authority (PRASA), et al
Civil No. 08-1239 (CVR)
Opinion and Order
Page 5

politically discriminatory animus." Rivera Cotto v. Rivera, 38 F.3d 611, 614 (1st Cir. 1994);

Vázquez v. López Rosario, 134 F.3d 28, 36 (1st Cir. 1998).

To prevail in a § 1983 claim, plaintiff has to demonstrate defendants deprived him

of federal constitutional rights, privileges or immunities, while acting under color of state

law. Romero-Barceló v. Hernández-Agosto, 75 F.3d 23, 32 (1st Cir. 1996). In order to

establish a *prima facie* case of political discrimination pursuant to § 1983, plaintiff has to

establish he engaged in a constitutionally protected conduct and this conduct was the

motivating factor in the adverse action. *Id. See also* González-De-Blasini v. Family

Department, 377 F.3d 81, 85 (1st Cir. 2004); Mt. Healthy, 429 U.S. at 287. Further, plaintiff

must demonstrate a causal relation between defendant's conduct and plaintiff's political

beliefs. LaRou, 98 F.3d 659, 663(1st Cir. 1996). That is, "[t]he plaintiff must point 'to

evidence on the record which, if credited, would permit a rational finder to conclude that

the challenged personnel action occurred and stemmed from a politically based

discriminatory animus." González-De-Blasini, 377 F.3d at 85 quoting LaRou, 98 F.3d at 661

quoting Rivera-Cotto v. Rivera, 38 F.3d 611, 614 (1st Cir. 1994). Although circumstantial

evidence may be sufficient to support a finding of political discrimination, plaintiff must

make a fact specific showing that a causal connection exists between the adverse treatment

and his political affiliation. Avilés-Martínez v. Monroig, 963 F.2d 2, 5 (1st Cir. 1992); Kercado

Meléndez v. Aponte Roque, 829 F.2d 255, 264 (1st Cir. 1987); Rosaly v. Ignacio, 593 F.2d

145, 149 (1st Cir. 1979).

In sum, a plaintiff who claims he or she was a victim of political discrimination "may

not prevail simply by asserting an inequity and tacking on the self-serving conclusion that

Luis A. Cora-Reyes v. Puerto Rico Aqueduct and Sewer Authority (PRASA), et al
Civil No. 08-1239 (CVR)
Opinion and Order
Page 6

the defendant was motivated by a discriminatory animus. It is the plaintiff who bears the initial burden of showing that political discrimination was the motivating factor in the adverse decision." *See* Avilés-Martínez, 963 F.2d at 5; Mt. Healthy, 429 U.S. at 287.  Only after a plaintiff has established a *prima facie* case, the burden shifts to defendants who must establish that they would have taken the same action regardless of plaintiffs' political beliefs. *Id*. *See also* Sánchez López v. Fuentes Pujols, 375 F.3d 121, 131 (1st Cir. 2004).

Plaintiff Cora testified he belongs to the New Progressive Party ("NPP") party, without more.  As such, plaintiff proved he was affiliated to a political party.  However, plaintiff Cora failed to establish that his political beliefs were known at PRASA by the decision makers and they were the motivating factor for the alleged adverse decisions.  Nothing suggests that Cora's  political beliefs were so widely known that he would have been a "conspicuous target[ ]" for discriminatory action. Acevedo-Díaz v. Aponte, 1 F.3d at 69. No evidence whatsoever, direct or circumstantial, was presented by plaintiff Cora that any of the defendants and other employees at PRASA, besides some of his friends, knew of his political affiliation.  Plaintiff only assumed co-defendant Pablo Reyes-Bonilla belonged to the opposing party, the Popular Democratic Party ("PDP"), for not seeing him in any of the activities of the association of NPP employees at PRASA.  Even if such evidence would be sufficient to establish that in fact Pablo Reyes-Bonilla was from another political party, proving that his political affiliation was a substantial or motivating factor in the adverse decision requires more than "merely juxtaposing a protected characteristic –some else's politics– with the fact that the plaintiff was treated unfairly." Correa-Martínez v. Arrillaga-Beléndez, 903 F.2d 49, 58 (1st Cir. 1990).

Luis A. Cora-Reyes v. Puerto Rico Aqueduct and Sewer Authority (PRASA), et al
Civil No. 08-1239 (CVR)
Opinion and Order
Page 7

The decision to relocate plaintiff from Caguas to the PRASA's headquarters known as "SEDE" and his reclassification from a work related accident investigator to a Special Investigator I in July 2007 were made by co-defendants Attorneys Obed Morales and Belkin Nieves. There was no evidence presented as to the political affiliation of Obed Morales and Belkin Nieves. No evidence was presented either that Nieves and Morales knew of plaintiff Cora's political affiliation or beliefs.

The decision to initiate a disciplinary action against plaintiff Cora after the meeting held on October 24, 2007 was taken by Esteban Cátala, José Medina and José Molina. There was no evidence presented as to the political affiliation of the three of them. No evidence was presented either that Cátala, Molina and Medina knew of plaintiff Cora's political affiliation or beliefs.

As to the overall re-classification and retribution plan implemented at PRASA in November 2007, the evidence shows the same applied to all non union managerial employees at PRASA. The plan was implemented pursuant to a study conducted by an outside firm. There was no evidence presented as to the political affiliation of the members of the firm who participated one way or another in the study. No evidence was presented either that those persons knew of plaintiff Cora's political affiliation or beliefs.

Plaintiff's claims of alleged political discrimination, as shown by the evidence presented, rest solely on his belief that he was discriminated for his political beliefs, without any specific factual information to support the claim. Cora's impression is self-serving, conclusory and speculative. No evidence whatsoever was presented that the decision makers of the employment decisions taken against plaintiff (including the relocation,

reclassification, the disciplinary action and the overall reclassification and retribution plan) knew of his political affiliation or that their decisions were motivated by a discriminatory animus. "Statements of political affiliation – unaccompanied by any specific factual information to support the claim and unrelated to any employment action taken by defendant against plaintiff are patently insufficient to establish an act of political discrimination." Peguero-Moronta v. Santiago, 464F.3d 29, 45 (1st Cir. 2006); Mercado-Alicea v. PR Tourism Co, 396 F.3d 46, 52 (1st Cir. 2005).

In the absence of proof that defendants knew of Cora's political affiliation and beliefs, it is difficult to see how his political beliefs could have been a substantial or motivating factor in Cora's employment decisions. See Carrasquillo v. Puerto Rico ex rel. Justice Dep't, 494 F.3d 1, 5 (1st Cir. 2007) ("[I]f Jiménez did not know Carrasquillo's political views, they could not have been a substantial factor motivating any adverse employment action.").

Under R. 50(a) dismissal is warranted without need for defendant to initiate his case. However, in the instant case, plaintiff Cora's strategy was to present mostly as "hostile witnesses" the testimonies of several defendants and other witnesses who are somewhat related to PRASA, to wit; Pablo Reyes-Bonilla, Jorge Ríos, Edwin Lozada, Germán Ocasio, Esteban Cátala-Nuñez, Eng. Jose F. Ortíz-Vazquez, Attorney Gloria Flores and Attorney Belkin Nieves-González. The testimonies of these witnesses showed PRASA had justifiable reasons for the employment actions taken against plaintiff. Thus, there is no evidence of pretext. In essence, the uncontested testimonies of these co-defendants on direct examination in support of the employment actions, including re-location, transfer,

assignment of duties, reclassification without any monetary reduction, and even the suspension from work and pay for forty (40) days that was thereafter administratively set aside,  as well as in regards to their lack of knowledge of plaintiff's political affiliation, served as further grounds for the Mt. Healthy defense that defendants' actions at Cora's employment were motivated by non-discriminatory reasons.

## II.   RETALIATION.

Plaintiff Cora's allegation of retaliation refers to alleged adverse employment actions taken because of his participation in what he considers as protected activity such as the hearings conducted by the state legislature in relation to some employees who were seemly intoxicated with aluminum at PRASA.  Still, from plaintiff's own statement at trial his testimony at said hearings took place on January 2008 while defendant PRASA's reclassification and retribution plan and the personnel action which plaintiff considers adverse were undertaken upon the approval of said reclassification plan which was announced and implemented on November 2007, as recommended by outside private firm retained by defendant PRASA to conduct the reclassification and retribution study.  In fact, the decision to initiate the disciplinary action against Cora was taken after the meeting held in October 24, 2007, way before Cora testified at said hearings.  Moreover, the evidence shows the overall reclassification and retribution at PRASA affected all non union managerial employees at PRASA, not only plaintiff Cora.

Plaintiff Cora also initially claimed retaliation for a protected activity in his refusal to carry out or even of being assigned as part of his duties as investigator, in an alleged violation of the Health Insurance Portability and Accountability Act ("HIPAA") law and the

ensuing doctor and patient confidentiality, the medical record of other employees of PRASA who were under the State Insurance Fund ("SIF").  HIPAA governs the confidentiality of medical records and regulates how and under what circumstances "covered entities" may use or disclose "protected health information" about an individual. The term "covered entities" is defined to include health care plans, health care clearinghouses and health care providers. 45 CFR §§ 160.102, 164.104. "Protected health information" includes all individually identifiable health information maintained or transmitted in any form, as well as any oral statement made about medical treatment or conditions. 45 CFR § 160.103. Generally, HIPAA prohibits the use and disclosure of an individual's protected health information unless the individual has authorized its use and disclosure. HIPAA provides, however, that a covered entity may use or disclose protected health information without the written authorization of the individual or the opportunity for the individual to agree or object in certain limited circumstances. 45 CFR § 164.512. The Health Insurance Portability and Accountability Act (HIPAA) does not create a private right of action. Miller v. Nichols, 586 F.3d 53 (1st Cir. 2009).

Plaintiff's evidence established, without rebuttal, that as to the HIPAA claim, those employees for whom plaintiff Cora obtained medical records at the SIF all provided a waiver of confidentiality for their employer to obtain their medical records.  In addition, the evidence established that, as part of his duties as a work place accident investigator, plaintiff Cora was assigned investigations of some employees who had been reported to the State Insurance Fund for extended periods of time.  As testified by Attorney Belkin Nieves, these investigations were done as part of an initiative at PRASA to reduce the expenses to PRASA

created by the leaves for those employees who reported to the SIF for work related accidents who enjoyed over two years of leave while under the SIF while also being paid their salaries and fringe benefits. Furthermore, plaintiff's subjective interpretation of HIPAA provisions is not legally sound since plaintiff took upon himself to defend third-parties interest and considered he had a cause of action against the employer if the HIPAA's rights of PRASA's employees were at issue.

Furthermore, and more importantly, plaintiff Cora did not establish that his own political affiliation or his participation in political activities were known by the defendants from which his political affiliation and First Amendment claims could be even inferred. Plaintiff's discrimination averments were geared towards his protected activities as above explained, including his participation in state legislative investigation and HIPAA. Plaintiff failed to establish that defendants knew what was plaintiff's political beliefs and/or association and that his political affiliation was known in the work environment. Plaintiff also failed to prove what was the political affiliation of the co-defendants except for Reyes-Bonilla whom he assumed was a PDP affiliate for not seeing him at the activities of the association of NPPs at PRASA. Plaintiff's questions were addressed as to whether the defendants held career or trust positions, which fail to address political affiliation in any manner. In fact, the evidence showed some of the co-defendants, who were appointed to trust positions by the governing party at the time, have remained to this day in said trust positions even though there was a change in administration after the general elections. As such, classification of a trust or a career position makes no distinction in this case as to the political affiliation of the defendants.

After considering plaintiff's evidence, the Court finds the evidence is not sufficient to show that plaintiff's political affiliation was a substantial or motivating factor in defendants' actions. Accordingly, plaintiff has failed to prove a *prima facie* case of political discrimination, for which the Section 1983 claim based on discrimination and retaliation and, thus, the damages claimed are to be DISMISSED.

## III.   CIVIL RIGHTS, SECTION 2000E, RETALIATION CLAIMS AGAINST PRASA.

Plaintiff Cora has also averred a violation to the Civil Rights Act, Section 2000e-3A against co-defendant employer PRASA on the same evidence and events above discussed as to the individual co-defendants under §1983. Mere inconvenience or an alteration of job responsibilities must be more disruptive than those argued by plaintiff as grounds for adverse changes in the terms and conditions of employment. Morales-Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010); Marrero v. Goya de P.R., Inc., 304 F.3d 7, 23 (1st Cir. 2002).

The evidence presented by plaintiff established that, after the overall reclassification and retribution plan at PRASA became effective in November 2007 not only plaintiff Cora but another employee, Jorge Ríos, in the same position of work related accidents investigator and affiliate of the prevailing political party at the time, was transferred from his position and reclassified to a Special Investigator I position. Cora retained the same salary scale and job salary notwithstanding the change in job title. In fact, plaintiff Cora received two salary increases in the year 2007.

Although plaintiff Cora was re-located to another work station in March 2007, that is from Caguas to the PRASA headquarters at SEDE, so was the other similarly situated

Luis A. Cora-Reyes v. Puerto Rico Aqueduct and Sewer Authority (PRASA), et al
Civil No. 08-1239 (CVR)
Opinion and Order
Page 13

employee Jorge Ríos.  In fact, the location site of said other employee was farther from his residence than the one assigned to Cora. Plaintiff Cora continued collecting mileage and per diem. Moreover, there was no evidence that the work assignment or duties and the working conditions assigned to Cora were unreasonably inferior to the norm of his position.

Work places are rarely idyllic retreats and the fact that an employee is displeased by an employer's action does not elevate said act to the level of materially adverse employment action to support a Title VII claim of employment discrimination or retaliation since plaintiff must prove, first and foremost, that he indeed suffered the claimed adverse action because of a discriminatory animus.  The employer's challenged action must result in a work situation that is unreasonably inferior to the norm for the position.  Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1218 (1st Cir. 1989).

For the same lack of evidence to establish retaliation or adverse employment action wherein plaintiff must proof having suffered retaliation because of an adverse employment action on account of a protected activity, that is, based on the employer's discriminatory animus, the Rule 50 motion is GRANTED as to co-defendant PRASA.

**IV.     LAW NO. 115 - STATE LAW RETALIATION.**

Law 115 of the P.R. Code, for retaliation against state government personnel for offering testimony before a legislative, administrative or judicial forum, is largely symmetrical in scope to Title VII retaliation claim against the employer under 42 USC Sec. 2000(e-3(a).

Law No. 115 provides that "No employer may ... "discriminate against an employee regarding the terms, conditions, compensation, location, benefits or privileges of the

Luis A. Cora-Reyes v. Puerto Rico Aqueduct and Sewer Authority (PRASA), et al
Civil No. 08-1239 (CVR)
Opinion and Order
Page 14

employment should the employee offer or attempt to offer, verbally or in writing, any testimony, expression or information before a ... judicial forum in Puerto Rico...." P.R. Laws Ann. tit. 29, § 194a(a). In order to prevail on a claim under Law 115, a plaintiff-employee must show that he engaged in protected activity and that he was thereafter "discriminated against regarding her employment." Salva v. Eagle Global Logistics 2006 WL 2685109, at 4 (D. Puerto Rico 2006). *See* Velez v. Janssen Ortho, LLC, 467 F.3d 802 (1st Cir. 2006).

Law No. 115 requires the same showing of an adverse employment action as Title VII. The employee-plaintiff must establish under Law 115 that he engaged in protected activity and then suffered discrimination at work. In granting judgment as a matter of law for Law No. 115, in Uphoff Figueroa v. Alejandro, 597 F.3d 423 (1st Cir. 2010) dismissal of Law 115 was considered harmless when there was an identical retaliation claim under federal law that was rejected, that is, the legal theory necessary to that claim was rejected.

The State Law 115 claims are hereby dismissed with prejudice for the same legal grounds above discussed as to the Title VII retaliation claim against PRASA employer under 42 USC Sec. 2000(e-3)(a).

## V.    DUE PROCESS CLAIMS.

The complaint makes reference to a request for due process and for redress on the grievances submitted being violated because of discrimination in violation of the Fourteenth Amendment of the U.S. Constitution and Article II, Section 1, 6 and 7 of the P.R. Constitution.

The Due Process Clause provides that no state shall "deprive any person of life, liberty or property without due process of law." U .S. Const. Amend. XIV, § 1. In order to

properly assert a procedural due process claim under § 1983, plaintiff must show that: [1] he had a property interest and [2] that defendants, acting under color of state law, deprived him of that property interest without providing him a constitutionally adequate procedure. Licari v. Ferruzzi, 22 F.3d 344, 347 (1st Cir. 1994); Rumford Pharmacy v. City of E. Providence, 970 F.2d 996, 999 (1st Cir. 1992); PFZ Properties v. Rodriguez, 928 F.2d 28, 30 (1st Cir. 1991). "Under the Due Process Clause of the Fourteenth Amendment, persons who possess a property interest ... cannot be deprived of that interest without due process of law." Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 6 (1st Cir. 2000).

Plaintiff in this case has failed to present by preponderance of the evidence sufficient evidence or facts to establish that defendants, acting under color of state law, deprived plaintiff Cora of the property right in his position without a constitutionally adequate process. Costa-Ureña v. Segarra, 590 F.3d 18, 26-27 (1st Cir. 2009). Plaintiff Cora who has retained his career position and his salary, was given a non summary disciplinary action of forty (40) days suspension without work or pay but the due process was followed and such personnel action was set aside upon plaintiff Cora appealing the decision. Moreover, as to the other personnel actions taken, plaintiff admitted he was properly informed of his right to appeal the decisions and the evidence shows he exercised that right multiple times, once even appealing all the way to the Supreme Court of Puerto Rico.

As to the administrative hearing conducted by Attorney Gloria Flores in relation to the intent to file a disciplinary action for Cora's failure to adequately complete the eleven (11) cases assigned, the evidence shows plaintiff Cora was provided due process. The fact that he was not allowed to appear at said hearing accompanied by his attorney because said

Luis A. Cora-Reyes v. Puerto Rico Aqueduct and Sewer Authority (PRASA), et al
Civil No. 08-1239 (CVR)
Opinion and Order
Page 16

hearing was an informal administrative non evidentiary hearing for which Attorney Flores explained he did not have the right to appear represented by counsel due to the nature of the hearing. The hearing was not for a termination from employment. The purpose of the hearing was to provide plaintiff Cora with an opportunity to inform his side of the story. Thus, it was Cora's decision to refuse to provide his version of facts even though he was provided an opportunity to do so. As such, Attorney Flores based her recommendation on the information on the record without the benefit of Cora's version. Cora appealed PRASA's determination of a forty (40) days suspension without pay and Cora recently prevailed in the work suspension, insubordination and use of obscene language claims when an Administrative Law Judge ("ALJ") issued an opinion in May 2010. PRASA prevailed on the neglect of work claim. The forty (40) days suspension from work was lifted and a written admonishment was recommended for the neglect of work claim. Thus, the worst Cora can face at this time is a written admonishment, the forty (40) days suspension without work and pay was never implemented. Cora has requested the reconsideration of the ALJ's decision. Thus, the appeals process has not concluded. It must be noted the evidence established that the forty (40) days suspension was "non summary" which means that it does not come into effect until all the process regarding appeals of said decision have concluded.

Plaintiff claims there was a violation of his due process because the notification of the disciplinary action of the forty (40) days suspension of work and pay was sent by mail to a wrong address. Nonetheless, plaintiff admitted in his testimony said notification was personally hand delivered to him five (5) days after. No evidence was presented that the

mailing of the notification to a wrong address was purposely done to deprive Cora of his rights. The evidence also shows he appeared before Attorney Flores and refused to testify as above explained. Thus, the issue of the address was non consequential.

Property interest is created and defined by existing rules or understanding that stems from an independent source, such as state law, that would give an individual a legitimate claim of entitlement to some sort of benefit. Plaintiff Cora received a whole gamut of due process as to the disciplinary measures initially imposed so much so that he was finally determined the sanction was to be lifted. Absent evidence that any post-discipline grievance procedure are per se inadequate, not followed or otherwise unavailable, there is no Fourteenth Amendment violation where adequate grievance procedure is in place and is followed. Dykes v. Southeastern Pennsylvania Transp. Authority, 68 F.3d 1564 (3d 1995).

As such, the due process claims are also DISMISSED.

## VI. INFERIOR WORK CONDITIONS AND HOSTILE WORK ENVIRONMENT.

A review of the complaint in this case shows plaintiff Cora has not made a claim for hostile work environment per se. Plaintiff Cora alleges inferior work conditions and a pattern of harassment as part of his discrimination claim.

There are two standards to consider in this case: for a cognizable claim of harassment under the First Amendment - preponderance of the evidence to show political affiliation is a substantial factor in causing the work environment to become inferior. Bisbal Ramos v. City of Mayaguez, 467 F.3d 16 (1st Cir. 2006) and for cognizable claim of harassment because of a First Amendment harassment claim, the government employee must prove by

clear and convincing evidence that he was subjected to unreasonably inferior work environment. *Id. See also* <u>Toledo Fernandez</u>, 405 f.3d 21, 23 (1st Cir. 2005).

The standard for the degree of mistreatment that is cognizable in a political discrimination case is set by <u>Agosto-de-Feliciano v. Aponte-Roque</u>, 889 F.2d at 1217-20, which held the employee must prove by clear and convincing evidence that his/her job had been rendered unreasonably inferior to the norm for that position and that the change was of a magnitude that would cause "reasonably hardy individuals to compromise their political beliefs and associations in favor of the prevailing party.

Plaintiff failed to establish that the conditions of employment were altered in such a way that could be unreasonably inferior to the norm as part of defendants' retaliatory or discriminatory acts. On the contrary, the evidence presented (through the testimonies of Esteban Cátala, Jorge Ríos and Germán Ocasio) shows the work conditions for plaintiff Cora, for which he some times had to work under the sun and had to lift heavy objects, and the assignment to work for the Mega Census were the same work and assignments as to other employees. As to the alleged lack of being assigned an office, the un-rebutted evidence showed that some cubicles were being constructed for the investigators. During the time of the construction, plaintiff Cora was temporarily placed in a conference room for him not to be affected by the dust created by the construction. The only cubicle which was available was shared by two (2) other employees. Thus, other employees were subjected to the same or similar conditions.

As to the alleged reduction of duties and no work being assigned, the evidence showed defendant Cátala did not assign work to plaintiff Cora for a limited period of time

until he (Cora) satisfactorily completed the eleven (11) cases he had been assigned. Otherwise, the evidence showed plaintiff Cora was assigned duties in the different positions he occupied including the so called "500 cases", participation in the Mega Census, other duties in diverse investigations, among others. However, no evidence was presented that the reduction of duties was so severe to affect his conditions of employment which may be considered an adverse employment action. Under Puerto Rico law, public employees have a property interest in their continued employment, not in the functions they perform. Rosado De Vélez v. Zayas, 328 F.Supp. 2d 202, 212 (D. Puerto Rico 2004) (citing Consejo de Educación Superior de la U.P.R. v. Roselló González, 137 D.P.R. 83, 110 (1994). See also Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 134 (1st Cir. 2005).

Even when some responsibility because of reorganization is lost, when the essential job remains unchanged, a general reorganization that results in some reduction in job responsibilities without an accompanying decrease in salary or grade, would not considered those changes to be dubbed as adverse employment action, being insufficient evidence of a material change in working conditions. Gu v. Boston Police Dept., 312 F.3d 6 (1st Cir. 2002) citing to MacCormack v. Boston Edison Co., 672 N.E.2d 1, at 8 (Mass. 1996) (an employee must demonstrate a change in working conditions that materially disadvantaged him to demonstrate an adverse employment action).

A job transfer without a reduction in pay and benefits may, under certain circumstances, be unacceptable to a reasonable person who is overqualified and humiliated by an extreme demotion or under qualified and essentially set up to fail in a new position. Flaherty v. Gas Research Inst., 31 F.3d 451, 457 (7th Cir. 1994). Still, one must have

presented evidence of drastic reduction in work conditions or significant diminishment in functions and authority to support such cause of action.  Evidence of drastic reduction in work conditions or significant diminishment in functions was not presented in this case.

Even though not raised in this case as a cause of action, a hostile work environment requires repeated conduct, that is, a series of separate acts that collectively constitute one unlawful employment practice not a single act but an aggregation of hostile acts extending over a period of time.  Marrero v. Goya de Puerto Rico, Inc., 304 F.3d 7 (1st Cir. 2002) (in the absence of more substantial and tangible changes in duties or work conditions, personal unpleasantness would be insufficient to establish a transfer as a materially adverse act of retaliation). No evidence of such repeated conduct was presented in this case.

Succinctly, plaintiff has failed to meet the burden to establish the harm suffered is sufficiently severe to meet the standard that the diminution in duties or unreasonably inferior environment by clear and convincing evidence, and by preponderance of the evidence that it was motivated by discrimination on the basis of political affiliation.  Ortiz García v. Toledo Fernández, 405 F.3d 21 (1st Cir. 2005).

PRASA in this case, through the testimonies of its witnesses presented by plaintiff as hostile witnesses, established by preponderance of the evidence that it would have made the same employment decision, regardless of political issues, as above explained.  González-Piña v. Rodríguez, 407 F.3d 425 (1st Cir. 2005).

## VII.  CONSPIRACY CLAIMS.

There is no need to address the conspiracy claims at this stage because they were dismissed at Docket No. 150 in the Opinion and Order of February 6, 2009.

In view of the above, all defendants' request under Fed.R.Civ.P. 50(a) is GRANTED because there is no legally sufficient evidentiary basis for a reasonable jury to find for plaintiff for a civil rights violation, retaliation or political discrimination by the defendants. Accordingly all federal pending claims against herein defendants are DISMISSED WITH PREJUDICE.

## VIII.  PENDENT STATE CLAIMS.

As to the supplemental or pendent state claims raised by plaintiff under state law, to wit; the Puerto Rico Civil Code §1802 (tort/damages) and the anti-retaliation laws, Law No. 115 , Law No. 426 (retaliation against public employees for whistle blower activities) and Law No. 100 (discrimination in employment because of age, race, color, sex, origin, social status, political affiliation, religious belief, victim of domestic violence, sexual assault or "acecho - persecution"), these are also DISMISSED with prejudice.  The evidence presented by plaintiff also failed to establish any political or discriminatory ground or retaliation for the employment action that would result in claims under state law or for the damages to be resolved by a jury or as state pendent claims.

## CONCLUSION

In view of the above discussed, defendant's Rule 50 motion is granted in its entirety. Accordingly, all federal claims filed against PRASA and co-defendants Attorney Obed Morales, Esteban Cátala, Attorney Belkin Nieves and Pablo Reyes-Molina are DISMISSED WITH PREJUDICE.  All pendent state claims under supplemental jurisdiction are also DISMISSED WITH PREJUDICE.

Luis A. Cora-Reyes v. Puerto Rico Aqueduct and Sewer Authority (PRASA), et al
Civil No. 08-1239 (CVR)
Opinion and Order
Page 22

Judgment to be entered accordingly.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 30th day of June of 2010.

s/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES MAGISTRATE JUDGE